UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

GREAT LAKES CYBER ACADEMY, d/b/a
GREAT LAKES LEARNING ACADEMY,

                Plaintiff,

                            Case No. 23-cv-00075

vs.

                            Hon. Robert J. Jonker

STRONGMIND, INC. and STRONGMIND
OF MICHIGAN, LLC,

                Defendants.                                                                    /

Jennifer Z. Belveal (P54740)
Nicholas J. Ellis (P73174)
Foley & Lardner LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
jbelveal@foley.com
nellis@foley.com

Terence M. Grugan (*pro hac to be filed*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500
grugant@ballardspahr.com
*Attorneys for Plaintiff*                                                        /

James J. Boutrous II (P53710)
David W. Schelberg (P76492)
Mitchell A. Capp (P84197)
MCDONALD HOPKINS PLC
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
(248) 220-1355; Fax: (248) 646-5075
jboutrous@mcdonaldhopkins.com
dschelberg@mcdonaldhopkins.com
mcapp@mcdonaldhopkins.com
*Attorneys for Defendants*

**PLAINTIFF GREAT LAKES LEARNING ACADEMY'S**
**<u>RENEWED EMERGENCY MOTION FOR INJUNCTIVE RELIEF</u>**

EXPEDITED CONSIDERATION REQUESTED

ORAL ARGUMENT REQUESTED

Great Lakes Cyber Academy, doing business as Great Lakes Learning Academy (hereinafter, "**Great Lakes**"), hereby moves this Court for preliminary injunction requiring Defendants StrongMind, Inc. and StrongMind of Michigan, LLC (together, "**StrongMind**") to immediately turn over the files necessary for Great Lakes to restore education services to approximately 1,100 students and otherwise comply with its contractual obligation to facilitate as set forth in the proposed order attached as **Exhibit A**.

In further support of its Motion, Great Lakes relies upon the statements of fact and arguments of law set forth in the accompanying Brief in Support, the pleadings and exhibits on file with the Court, applicable law, equity, and the Federal Rules of Civil Procedure. Great Lakes has sought concurrence in the relief requested in this Motion during phone discussions with StrongMind, which concurrence has been refused.

WHEREFORE, Great Lakes respectfully requests that the Court:

A. Enter the proposed order attached as **Exhibit A** granting a temporary restraining order and preliminary injunction in favor of Great Lakes;

B. Awarding Great Lakes its attorney fees and other costs incurred in connection with this Motion; and

C. Granting Great Lakes such other relief as it may be entitled under statute, law, equity or contract.

Respectfully submitted,

Dated: January 20, 2023       **FOLEY & LARDNER LLP**


<u>/s/ Nicholas J. Ellis</u>
Jennifer Z. Belveal (P54740)
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
jbelveal@foley.com
nellis@foley.com

Terence M. Grugan (*pro hac to be filed*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

GREAT LAKES CYBER ACADEMY, d/b/a
GREAT LAKES LEARNING ACADEMY,

                     Plaintiff,

                                     Case No. 23-cv-00075

vs.

                                     Hon. Robert J. Jonker

STRONGMIND, INC. and STRONGMIND
OF MICHIGAN, LLC,

                     Defendants.                                              /

| | |
|---|---|
| Jennifer Z. Belveal (P54740) | James J. Boutrous II (P53710) |
| Nicholas J. Ellis (P73174) | David W. Schelberg (P76492) |
| Foley & Lardner LLP | Mitchell A. Capp (P84197) |
| 500 Woodward Avenue, Suite 2700 | MCDONALD HOPKINS PLC |
| Detroit, MI 48226 | 39533 Woodward Ave., Ste. 318 |
| (313) 234-7100 | Bloomfield Hills, MI 48304 |
| jbelveal@foley.com | (248) 220-1355; Fax: (248) 646-5075 |
| nellis@foley.com | jboutrous@mcdonaldhopkins.com |
| | dschelberg@mcdonaldhopkins.com |
| Terence M. Grugan (*pro hac to be filed*) | mcapp@mcdonaldhopkins.com |
| Ballard Spahr LLP | *Attorneys for Defendants* |
| 1735 Market Street, 51st Floor | |
| Philadelphia, PA 19103-7599 | |
| (215) 665-8500 | |
| grugant@ballardspahr.com | |
| *Attorneys for Plaintiff* | |

**PLAINTIFF GREAT LAKES LEARNING ACADEMY'S
BRIEF IN SUPPORT OF ITS
<u>RENEWED EMERGENCY MOTION FOR INJUNCTIVE RELIEF</u>**

## I.    <u>INTRODUCTION</u>

By this Motion, Great Lakes Cyber Academy, d/b/a Great Lakes Learning Academy (hereinafter, "**Great Lakes**")[1] seeks emergency injunctive relief requiring StrongMind, Inc. and StrongMind of Michigan, LLC (together, "**StrongMind**") to comply with its contractual obligations to facilitate an orderly transfer of education services, including immediately turning over the data and files – in a usable format –  necessary for Great Lakes to restore education services to approximately 1,100 Michigan children that StongMind shut-off Sunday evening on January 15, 2023.

It is difficult to conceive of a party escalating a dispute as aggressively, disastrously and unnecessarily as StrongMind has done here. As described in below and Great Lakes' Complaint, StrongMind is an educational services provider to Great Lakes, a nonprofit Michigan public charter school authorized by Central Michigan University.  In June 2022, StrongMind discovered that it had missed enrollment quotas—according to its own analysis and admissions.  Under its agreement with Great Lakes, this shortfall required StrongMind make certain payments to Great Lakes.  When a state audit later determined the enrollment shortfall was greater than previously determined—therefore subjecting StrongMind to greater payments—StrongMind embarked on a scorched-earth campaign that destroyed its relationship with Great Lakes and crippled Great Lakes' ability to run the school.

Attempting to extort significant concessions from Great Lakes, including blanket waivers of StrongMind's liability, cash payments and other concessions, StrongMind purported to unilaterally terminate its contract with Great Lakes, effective January 15, 2023 – despite a contractual provision that strictly prohibits mid-school year contract termination. Despite

---

[1] Great Lakes is referred to in many of the relevant communications and documents by the acronym GLLA.

StrongMind's flagrant breach of its obligations, Great Lakes sought to mitigate the harm by scrambling to bring in an alternative provider ("**Pearson**"). However, despite taking initial steps to work with Great Lakes' operational and technical team to effectuate the transfer – as it is required to do under the contract – StrongMind subsequently did an about face and refused to facilitate the transfer of operations to Pearson.

*On January 15, 2023, StrongMind closed its entire education platform to Great Lakes, its students and teachers*. Administrators attempting to verify student attendance or grades were denied access. Teachers attempting to administer lessons were denied access. Students attempting to complete assignments found their course work gone, if they were able to access the school platform at all. Phone systems and internet access have been shut-off. They remain so as of filing this Motion.

On January 18, 2023, Great Lakes filed this lawsuit and an emergency motion for injunctive relief in Ingham County Circuit Court and the Ingham County Circuit Court set a show cause hearing for 10:00 AM on Monday, January 23, 2023. In an effort to further delay relief and prolong the harm to Great Lakes students, StrongMind removed the lawsuit to this Court on January 20, 2023.

The Court must intervene. There could be no clearer case of irreparable harm resulting from conduct of the utmost bad faith. StrongMind's contractual breaches could not be clearer. StrongMind has simply abandoned Great Lakes and over 1,110 Michigan high school students, including special education students, students on track to graduate, and threatening Great Lakes' continued operations and the academic progress of those students. Michigan public policy abhors such conduct. StrongMind has disregarded the responsibilities of its position as a steward for the education of Michigan children, all in an apparent attempt to avoid its own contractual obligations.

After Great Lakes filed its lawsuit in Ingham County Circuit Court, the parties had initial discussions about whether education services could be restored by StrongMind simply restoring what it had shut off on January 15, 2023.  However, StrongMind has represented that this is no longer possible given some of the steps that have already been taken, including transferring the employment of teachers to Pearson.  Despite claiming that it cannot restore the education services itself, StrongMind has refused to turn over control of key files and information necessary for Great Lakes/Pearson to do so – including the Google Domain necessary for student and teacher laptops to function and access the educational services – based on vague claims that StrongMind owns some undefined intellectual property in the way it structured the domain.  What files and information StrongMind has provided are, in many cases unusable garbled code rather than excel or text files containing the critical information (such as student records) in a usable and intelligible format. Even where files are otherwise usable, the time that would be required to understand and implement them without the cooperation of StrongMind to explain the organization and location of information will prolong the transition and continue to prejudice students at a time when they should be completing their education and when many seniors are applying to colleges and for financial aid.

*The sole priority at this juncture needs to be getting the 1,100 students back into school, allowing them to continue their education, and allowing graduating seniors to complete their college applications and financial aid*. StrongMind created this disaster by flagrantly breaching its contract and shutting down the education services. Strongmind now has to fix the situation it created and is estopped from complaining if it does not like the measures required of it to restore those services. Any disputes between the parties regarding ownership of intellectual property or other obligations can be resolved by the parties or the Court at a later date.  Great Lakes requests

that the Court enter the order attached as **Exhibit A** imposing a preliminary injunction and temporary restraining order requiring StrongMind to immediately and fully cooperate in transferring to Great Lakes/Pearson all files and data necessary to resume education services.

## II.    BACKGROUND[2]

### A.    The Parties and the Agreement

Great Lakes is a cyber academy serving high school students throughout Michigan.  On June 23, 2020, StrongMind and Great Lakes entered into a Standard Curriculum License and School Administrative Services Agreement, including subsequent amendments (the "**Agreement**").  (*See* Initial Agreement attached hereto as **Exhibit 1** and the First Amendment to the Agreement (the "**First Amendment**") attached hereto as **Exhibit 2**).

Pursuant to the Agreement, Great Lakes utilizes StrongMind's full suite of educational operations support to run its academy, including: curricula, testing, homework, references, workbooks, software, a learning management system, a student management system, and a parent student portal, among other services (the "**Curriculum**").  StrongMind also hosts the Curriculum on its computer network system.  (Agreement Ex. C.)

In addition to the Curriculum, StrongMind provides an extensive list of services, defined in the Agreement as the "StrongMind Services", including:

- Providing a digital curriculum;

- Providing access to its Learning Management System;

- Providing a Student Information System that will support Great Lakes' tracking needs including student information and course progress;

---

[2] The factual background set forth below is supported by the affidavits of Theresa Sprouse and Jonathon Leyh, attached hereto as Exhibits 13 and 14, respectively, as well as the documents cited herein and attached as exhibits hereto.

- Providing an innovative engagement system intended to be used by Great Lakes to support relationships and engagement between students, teachers, and parents;

- Providing a Parent Student Portal, which allows parents and students to access grades, contact their teachers, read school announcements, and connect with peers;

- Providing third-party program integration;

- Providing reporting and analytics to help students, teachers, and administrators maximize student success;

- Maintaining the Great Lakes website;

- Employing Great Lakes' instructional and administrative staff;

- Monitoring protocols for compliance with state and federal educational requirements;

- Fulfilling business management needs;

- Managing accounts payable;

- Providing compliance services;

- Providing human resources services;

- Managing payroll; and

- Otherwise "support[ing] the school in all matters of school operations that are crucial to the success of its educational mission."

**(Exhibit 1**, Agreement Ex. D)

**B.    The Agreement Prohibits Mid-Year Termination And Requires StrongMind To Facilitate Any Transition**

StrongMind exclusively possesses, on its various controlled systems, all student information, including enrollment records, educational backgrounds, financial records, curriculum, and more.  Great Lakes cannot function without StrongMind either continuing to operate its academy or helping Great Lakes transition to a new provider.  Accordingly, the Agreement included a number of protections for Great Lakes and its students.

5

<u>First</u>, the Agreement prohibits StrongMind from terminating mid-year. Specifically, Section 7.6 of the Agreement provides that:

> ***The Academy Board and StrongMind should agree to make all efforts necessary to remedy a breach of this Agreement in order to continue school operations until completion of the then-current school fiscal year***. If a breach cannot be remedied, the Academy Board and StrongMind agree to work cooperatively to transition management and operations of the Academy without disrupting the Academy's operations. StrongMind shall perform this transition in a similar manner as described in Section 7.7 based upon completion of the then-current school period.
>
> **(Exhibit 1** § 7.6 (Emphasis added).

<u>Second</u>, in the event that a termination otherwise occurs, StrongMind must take steps to facilitate a transfer of operations prior to terminating its services, including, among others: organize and prepare student records for transition to the new educational service provider; organize and prepare the Academy's records, both electronic and hard-copy, for transition to the new ESP; and provide for the orderly transition to the new ESP:

> Upon termination or expiration of this Agreement, or if this Agreement is terminated due to a Contract revocation, reconstitutions, termination or non-renewal, StrongMind shall, without additional charge: (i) close the financial records on the then-current school fiscal year which includes, but is not limited to, the completion and submission of the annual financial audit, state and federal grant reporting and all other associated reporting within required timelines established by the appropriate local, state or federal authority; (ii) organize and prepare student records for transition to the new educational service provider ("ESP"), self-management or in the case of a school closure, transfer to a student's new school a designated by the student's parent/legal guardian or to a person or entity authorized to hold such records; (iii) provide for the orderly transition of employee compensation and benefits to the new ESP or self-management without disruption to staffing, or in the case of school closure, final payment of all employee compensation, benefit and tax obligations related to services provided by StrongMind to the Academy; (iv) organize and prepare the Academy's records, both electronic and hard-copy, for transition to the new ESP, self-management or dissolution; and (v) provide for the orderly transition to the new ESP, self-management or

6

> dissolution of all Academy-owned assets including, but not limited to, furniture, fixtures, equipment and real estate.  This includes any keys, log-in information and passwords related to any Academy asset.

(*Id.* at § 7.7.)

### C.  StrongMind's Minimum Enrollment Obligations

The Agreement also requires StrongMind to achieve minimum enrollment numbers and imposes liquidated damages against StrongMind if an audit reveals Great Lakes' student enrollment has fallen below the contracted level. (Exhibit 1 § 6.8.) Failure to meet the enrollment guarantee requires StrongMind to issue certain credits to Great Lakes. *Id.*

In June 2022, StrongMind concluded that it had missed its targeted enrollment guarantee. Whereas the Agreement required StrongMind to achieve state funded enrollment of 1,088.37 students, the audit revealed it had enrolled only 981.14 students for the 2021-2022 School Year. On June 29, 2022, Joshua Solomon, StrongMind's Senior Director, acknowledged its shortfall and its obligation to remit liquidated damages to Great Lakes for its shortfall. (Email from Joshua Soloman, Sen. Dir., ESS Business Development to Doug McNeil dated June 29, 2022, 12:47 CST, attached as **Exhibit 12.**)

However, August came and went without StrongMind remitting any payment to Great Lakes. Instead, by October, a further audit conducted by Ingham Intermediate School District ("**ISD**") of the Fall 2021 pupil count determined that StrongMind's shortfall was substantially greater than previously reported as it concluded that 212.12 FTE (full time equivalent) students had been disqualified for state-funding purposes because they did not meet the state's enrollment requirements.  On November 9, 2022, StrongMind submitted a dispute to ISD concerning its pupil calculation.  First, StrongMind argued that ISD was applying its pupil accounting method inconsistently to it.  Second, StrongMind disputed that it missed its enrollment target.  On

November 17, 2022, StrongMind followed its November 9, 2022 correspondence to ISD with a formal request to the Audit Manager in the Michigan State Office of Financial Management requesting a formal agency review of ISD's pupil count

### D.    StrongMind's Purported Termination of the Agreement

Rather than comply with its obligations, StrongMind chose to abandon Great Lakes and its student body and hold their education hostage.  On November 13, 2022, StrongMind submitted notice of its intent to forgo renewing the Agreement following the conclusion of the 2022-2023 academic year.  (*See* November 13, 2022 Notice of Non-renewal, attached hereto as **Exhibit 3.**)

Subsequently, on November 29, 2022, StrongMind accelerated its abandonment of the school, submitting a purported notice that it would cease performing under the Agreement by January 15, 2023.  (*See* November 29, 2022 Mid-Year Termination Notice, attached hereto as **Exhibit 4.**)  StrongMind submitted this notice even though the contract expressly forbids "mid-year terminations" except under extremely limited, and plainly inapplicable circumstances. StrongMind purportedly based its termination on Section 7.4 of the Agreement, which allows for termination if "there is a change in law or in the manner in which Academy is funded that would have a material, adverse effect on either Party's ability to perform its obligations under this Agreement…" *Id.*  However, no such change has occurred and, even if one had occurred, it would not relieve StrongMind of its obligation to provide transition services.

### E.    StrongMind Refuses to Provide Transition Services and Intentionally Disrupts the Education of Great Lakes' Students

In response to StrongMind's improper termination, Great Lakes leapt into action, procuring the services of a new third-party educational services provider—Pearson—in an effort to continue its students' education without interruption due to StrongMind's sudden and unlawful purported termination of the Agreement.

Even though StrongMind is already contractually obligated to facilitate the transition of operations to Pearson "without additional charge," StrongMind, on January 10, 2023, demanded Great Lakes furnish to it a new "Transfer Agreement" outlining what Pearson required to assume responsibility for providing Great Lakes educational services.  Pearson did so on January 13, 2023. (Proposed Transition Agreement, **Exhibit 10.**)

StrongMind immediately rejected the proposed Transfer Agreement, refusing to cooperate on the transition unless Great Lakes acceded to its extortionate demands, including agreeing to waive all potential litigation against StrongMind and to pay StrongMind significant, but undefined, remuneration.  (Letter from StrongMind to Great Lakes Learning Academy dated Jan. 13, 2023, **Exhibit 5.**)

On January 14, 2023, StrongMind had committed to an initial data transfer – agreeing to transfer to Great Lakes student enrollment records and certain limited financial information "by January 15, 2023 at 5:00 pm MST."  *Id*.  However, when Great Lakes and Pearson attempted to coordinate that transfer, StrongMind reneged again stating: "Strongmind employees are not available to meet last minute today.  This is a holiday weekend."  (*See* January 15, 2023 email from StrongMind to Great Lakes, **Exhibit 11.**)

By 5:31 pm MST on January 15, 2023, StrongMind shut down all of Great Lakes' functions necessary to run the school.  For example, StrongMind locked Great Lakes out of Canvas, Great Lakes' Learning Management System, used for creating, delivering, and tracking course materials such as homework assignments and syllabi.  As of January 15, 2023, no Great Lakes student could access their homework, review prior work, submit new assignments, or view their grades.

Similarly, StrongMind disabled Great Lakes' Google domain, which prevents Great Lakes' students, teachers, and administrators from accessing various Google products necessary for

attending, teaching at, or running the school.  These products include, for example, Great Lakes'
document management system, which stores, among other things, student enrollment documents,
academic record information, class assignments, and government-mandated Individualized
Education Program (IEP) and 504 plans, used to ensure that students with disabilities have
appropriate resources, accommodations, or support to achieve academic success.

StrongMind also disabled Great Lakes' access to PowerSchool, software used to keep track
of all student information, including academic records, student enrollment, class schedules,
evaluations, grades, addresses, and demographic information used to comply with various state
reporting requirements.  As of January 15, 2023, students could not obtain their transcripts because
that information is stored in PowerSchool.

Additionally, StrongMind has disabled Great Lakes' website, retained the control of its
public-facing social media accounts, disconnected some of its phones, and made school-owned
chromebooks in use by students inoperable, disabled the website, and initiated other shut-down
tasks.  StrongMind has unplugged Great Lakes.  And, it has done so solely in an apparent effort to
avoid paying contractual obligations for failing to meet enrollment numbers.

*As of the filing of this action, Great Lakes' students have no school to attend because of
StrongMind's deliberate actions*.  The Court can and must undo the harm StrongMind has already
caused and order StrongMind to meet its commitments to put the education of Michigan children
above its financial interests.

### F.      StrongMind Refuses to Turn Over Files and Access That Great Lakes Needs to Restore Education Services

Following StrongMind's refusal to provide the contractually required transition services,
Great Lakes has sought to obtain the minimum files and information needed to restore some

semblance of education services for its students.  Late evening on January 17, 2023, StrongMind offered to turn over a portion of the necessary files, including:

- Great Lakes' website and social media files;

- Great Lakes' Powerschool SIS files & enrollment data;

- Great Lakes' Financial Data; and

- Great Lakes' Google Drive files.

(Doajo Hicks Email dated January 17, 2023, Email Chain attached as **Exhibit 15.**)

Great Lakes responded the next morning confirming that it would send someone to StrongMind's office to collect the files offered, but requesting that StrongMind also turn over the following information:

- Great Lakes' Student Course Enrollment files from the Canvas LMS;

- Access to and control of Great Lakes' Google Workspace for Education and GLLA.org domain attached to it.; and

- Access to and control of Great Lakes' Vonage phone system.

(Terence Grugan Email dated January 18, 2023, Email Chain attached as **Exhibit 15.**)

To date, StrongMind has refused to provide the information requested by Great Lakes. Although StrongMind has turned over some files,  it has failed to turn over the information it previously represented that it would deliver in a useable and organized format. At this time, judicial intervention is needed to prevent further games by StrongMind and further damage to Great Lakes' students.

## III.  <u>LEGAL STANDARD</u>

The requirements for injunctive relief are well-established.  In determining whether to issue injunctive relief, courts consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether the

issuance of a preliminary injunction would cause substantial harm to defendant or others; and (4) the impact of the injunction on the public interest.  *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009). These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002).

The decision whether to issue an injunction is within the discretion of the trial court. *Oleson's Food Stores v. Local 876 United Food & Comm. Workers*, 797, 591, (W.D. Mich. 1991) (citations omitted).  The purpose of a preliminary injunction is to preserve the statute quo pending a final hearing regarding the parties' rights. *Id*. The status quo is the last actual, peaceable noncontested status quo which preceded the pending controversy. *Psychological Services of Bloomfield, Inc v Blue Cross & Blue Shield of Michigan*, 144 Mich App 182, 185; 375 NW2d 382 (1985).

## IV.   ARGUMENT

### A.    Great Lakes Will Prevail in its Breach of Contract Claim

Great Lakes will succeed on the merits because the contract is unambiguous and requires StrongMind to facilitate the transition of operations.  Under this prong of the analysis, the moving party must demonstrate that it is likely to prevail on the merits of a fully litigated action.

Michigan law requires a party claiming breach of contract to prove the terms of the contract, that the defendant breached the terms, and that the breach caused an injury.  *Van Buren Charter Twp v. Visteon Corp*, 319 Mich. App. 538, 540; 904 N.W.2d 192 (2017).  Where contractual language is clear and unambiguous, courts must interpret and enforce the contract as written. *Kendzierski v. Macomb Co*, 503 Mich. 296, 309, 931 N.W.2d 604, 611 (2019).  "The primary goal in interpreting contracts is to determine and enforce the parties' intent.  [citation

omitted]. To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Old Kent Bank v. Sobczak,* 243 Mich. App. 57, 63; 620 NW2d 663 (2000). Under Michigan law, specific performance to a contract generally "will be decreed where its effect will be to give to each party that for which he contracted and will work no wrong or injustice to either." *Zak v. Gray,* 324 Mich. 522, 526; 37 N.W.2d 550 (1949).

Great Lakes filed its Complaint alleging claims for breach of contract and seeking specific performance because StrongMind failed to perform its obligations under the terms of the Agreement. Section 7.6 of the Agreement, for example, states that "StrongMind agree[s] to work cooperatively to transition management and operations of the Academy without disrupting the Academy's operations." *See* Agreement § 7.6. And Section 7.7 outlines specific steps that StrongMind must take prior to terminating its services.

Despite this, however, StrongMind failed to facilitate a transition of management and operations of its services without disrupting Great Lakes' operations. Instead, StrongMind has terminated all of its services, effectively shutting down Great Lakes and leaving it with no ability to operate the school.

Based on the obligations of the Agreement and the fact that StrongMind failed to follow requirements outlined in Sections 7.6 and 7.7 of the Agreement, there is a substantial likelihood that Great Lakes will prevail on the merits of its declaratory action and breach of contract claim. Accordingly, this factor weighs in favor of granting injunctive relief.

### B. Great Lakes Will Suffer Irreparable Harm if StrongMind Does Not Continue to Provide Great Lakes with its Services and Facilitates the Transition of Operations to Pearson

Absent an injunction, Great Lakes – and more importantly, its students – will suffer irreparable harm. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.2d at 578. An injunction is

also appropriate where a case involves "the kinds of injury for which monetary damages are difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992)). For example, "[t]he loss of customer goodwill often amounts to irreparable harm because the damages flowing from such losses are difficult to compute." *Basicomputer Corp*, 973 F.2d at 512.

It is well-established that denying children access to education, even temporarily, constitutes irreparable harm. *Certain Named and Unnamed Non-Citizen Children and Their Parents v. Texas*, 448 U.S. 1327, 1332-33 (1980); *Berry v. Sch. Dist. of City of Benton Harbor*, 467 F. Supp. 721, 732 (W.D. Mich. 1978); *Doe v. GMU*, 179 F. Supp. 3d 583, 588 (E.D. Va. 2016); *Davis v. School Dist. of City of Pontiac, Inc.*, 309 F. Supp. 734, 736 (E.D. Mich. 1970); *Doe v. Baum*, Case No. 16-13174, 2019 WL 4809438 (E.D. Mich. Sep. 30, 2019).  Indeed, the Supreme Court has recognized that the harm caused to children by denial of education "needs little elucidation." *Certain Named and Unnamed Non-Citizen Children and Their Parents*, 448 U.S. at 1332.

Here, as detailed above, the 1,100 students attending Great Lakes academy have had their education arbitrarily shut off by StrongMind in a fit of pique over its own failure to meet contractual obligations. ***As of January 17, 2023 (after the holiday weekend) Great Lakes' students do not have a school to attend because StrongMind shut down the Great Lakes student and parental portal, made school-owned chromebooks in use by the students inoperable, and disabled the school's website.***  Great Lakes' students are not able to go to class, check or complete their assignments, or review their syllabi.  They may become unable to matriculate.  Great Lakes' staff, its teachers, and administrators will be unable to access any of the student information.  The parents are prevented from accessing their children's records, grades, and coursework. The

situation created by StrongMind is beyond unacceptable and immediate action is needed to prevent further irreparable harm to Great Lakes' students. *Certain Named and Unnamed Non-Citizen Children and Their Parents*, 448 U.S. at 1332-33; *Berry*, 467 F. Supp. at 732; *Doe*, 179 F. Supp. 3d at 588; *Davis*, 309 F. Supp. at 736 (E.D. Mich. 1970); *Doe*, 2019 WL 4809438.

Although secondary to the harm that StrongMind is causing to students, Great Lakes also faces irreparable harm. Injunctive relief is appropriate, and should be granted, when defendant's non-performance on a contract would cause plaintiff to shut down its operations and cause harms that extend beyond the plaintiff. *See e.g., Lear Corp v Dura Auto Sys*, No. 06-075939-CZ, 2006 Mich Cir LEXIS 1607, *1 (Mich. Cir. Ct. Aug. 11, 2006).[3]   In *Lear*, a case presenting issues similar to those here, the trial court granted a temporary restraining order and a subsequent preliminary injunction where the defendant's intention to stop shipping product to the plaintiff would cause plaintiff to shut down some of its plants. *Id.* at *3.  The court explained that "this would result in millions of dollars in liabilities, severe economic dislocations and untold human suffering for the employees involved." *Id.*  The court also noted that defendant's demand that the plaintiff surrender its contractual setoff right "is an intangible right to security" that is not easily calculable. *Id; see also Intertec Systems, LLC v. Multimatic*, Inc., 04-CV-736661-DT (E.D. Mich, October 14, 2004), pp 6-7 (citations omitted) (holding that a supplier's refusal to ship parts resulting in a production shut down for a Mazda 6 vehicle would result in a "cascading effect" leading to losses for the plaintiff, its OEM customer, and employees that was not entirely compensable with money, and that "the ceasing of shipments in the automobile industry can wreak particular havoc" and may result in "immediate and dramatic consequences" including production shutdowns and the layoff of "innumerable employees"); *In BorgWarner PDS (Anderson), LLC v*

---

[3] Compendium of unpublished cases attached as **Exhibit 16**.

*Indus Molding Corp*, No. 20-10607, 2020 US Dist LEXIS 41937, at *17 (ED. Mich. Mar. 11, 2020) ( finding that without continued supply of parts, the plaintiff's business will grind to a halt and lead to "incalculable losses from being shut out of future supply work with its OEM customers; . . . losing various employees due to a lack of work, and . . . severe damage to BorgWarner's reputation as a reliable, on-time supplier, likely leading to lost goodwill and future business opportunities with other OEMs. All of these possible consequences constitute irreparable harm.").

Great Lakes also notes that StrongMind's offer to facilitate the transition of services only if Great Lakes agrees to waive all potential litigation against StrongMind and make other concessions is inapposite and further supports a showing of threatened irreparable harm.  Surrender of all potential litigation claims against StrongMind is not susceptible to compensation in monetary terms because "it is an intangible right to security."  *See Lear Corp*, 2006 Mich. Cir. LEXIS 1607, *5; *see also HBPO Northern America, Inc., v. US Farathane*, LLC, No 21-190331-CB (Mich. Cir. 2021) (dismissing defendants' argument that the plaintiff "could and should have paid an increased price).  Accordingly, this factor weighs in favor of granting injunctive relief.

### C.    The Balance of Harm Favors Granting Injunctive Relief

The balance of harms weighs decidedly in favor of issuing an injunction.  StrongMind will suffer little to no harm if an injunction is issued. As detailed above, denying injunctive relief will allow StrongMind to continue its refusal to provide contractually obligated services to Great Lakes, causing an interruption in education to over 1,110 students for a prolonged time, resulting in irreparable harm to both the students and Great Lakes.

Conversely, requiring StrongMind to facilitate the transition does no more than require StrongMind to do what it already committed under the Agreement. Any disputes regarding

ownership of intellectual property or other issues can be resolved at a later date. Furthermore, even if StrongMind otherwise could show that it will suffer some harm, such harm is solely of its own making due to its egregious conduct in creating this situation in the first place by choosing to shut down the education of 1,100 students in the middle of the school year. In deciding whether to grant an injunction, courts will disregard any alleged harm that is largely of a party's own making. *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001); *Bannum, Inc. v United States*, 56 Fed. Cl 453, 459 (Fed. Cl. 2003). Accordingly, the balancing of the harms decidedly favors granting injunctive relief.

**D.      Injunctive Relief Is In Public Interest**

Finally, the public interest weighs decidedly in favor of issuing an injunction in order to avoid disrupting the education of approximately 1,100 students.  If StrongMind is not ordered to comply with its contractual obligation to facilitate a transition to a new provider, as is required by the Agreement, the impact will be devastating on individual students and families that rely on Great Lakes for their educational needs.   Under these circumstances the public interest factor favors injunctive relief.  *See Michigan Protection & Advocacy Service, Inc. v. Flint Community Schools*, 146 F. Supp. 897 (E.D. Mich. 2015) (granting injunction and finding that public interest favored requiring defendant to produce records related to students' education).

More generally, enforcement of a contract in accordance with its terms is in the public interest.  Parties should not be encouraged to leverage their position to contradict contractual obligations because doing so would lead to economic uncertainty and drive up the price of contracting.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) ("Enforcement of contractual duties is in the public interest."); *Neveux v.*

17

*Webcraft Tech., Inc.*, 921 F. Supp. 1568, 1573 (E.D. Mich. 1996) (The public has an interest in preserving the enforceability of contracts).

**V.**    **CONCLUSION**

All four of the elements of injunctive relief weigh heavily in favor of entry of an injunction. Accordingly, Great Lakes is entitled to Preliminary Injunction requiring StrongMind to immediately facilitate the transition to Pearson.

WHEREFORE, it is respectfully requested that this Court enter a Preliminary Injunction in favor of Great Lakes against StrongMind consistent with Exhibit A and any other relief the Court deems necessary or appropriate.

Respectfully submitted,

Dated: January 20, 2023                **FOLEY & LARDNER LLP**

/s/ Nicholas J. Ellis
Jennifer Z. Belveal (P54740)
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
jbelveal@foley.com
nellis@foley.com

Terence M. Grugan (*pro hac to be filed*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

*Attorneys for Plaintiff*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.2, the undersigned hereby certifies that the foregoing dispositive brief complies with the word limit set forth in Local Rule 7.3(2)(i), and otherwise complies with all applicable rules and requirements.  The number of words contained in the brief, exclusive of case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, affidavits and other addenda, is calculated as 5,092, using Microsoft Word 2016.

/s/ Nicholas J. Ellis
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
nellis@foley.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 20, 2023 I filed the foregoing document and this Certificate of Service with the Court using the ECF system.

/s/ Nicholas J. Ellis
Nicholas J. Ellis (P73174)
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
(313) 234-7100
nellis@foley.com